**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **CERTAIN UNDERWRITERS AT** | ) | |
| **LLOYD'S LONDON,** | ) | |
| | ) | |
|    **Plaintiff,** | ) | **Case No.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **POWER HOME SOLAR, LLC D/B/A** | ) | |
| **PINK ENERGY, F/K/A POWER HOME,** | ) | |
| **SOLAR & ROOFING,** | ) | |
| 919 North Main Street, Mooresville, NC | ) | |
| 28115 | ) | |
| | ) | |
| **KIMBERLY CLEVELAND** | ) | |
| 10510 Lafayette Drive NW, Canal Fulton, | ) | |
| OH 44614 | ) | |
| | ) | |
| **WILLIAM CLEVELAND,** | ) | |
| 10510 Lafayette Drive NW, Canal Fulton, | ) | |
| OH 44614 | ) | |
| | ) | |
| **DAVID HUTZELL,** | ) | |
| 1624 Delgany Street, Columbus, OH 43228 | ) | |
| | ) | |
| **DEBBI HUTZELL,** | ) | |
| 1624 Delgany Street, Columbus, OH 43228 | ) | |
| | ) | |
| **TERI WHITAKER,** | ) | |
| 5306 Shields Road, Lewisburg, OH 45338 | ) | |
| | ) | |
| **RICHARD ANNON,** | ) | |
| 499 England Hallow Rd, Chillicothe, OH | ) | |
| | ) | |
| **TRACY ANNON** | ) | |
| 499 England Hallow Rd, Chillicothe, OH | ) | |
| | ) | |
| **DENISE FARAG,** | ) | |
| 2196 Bridle Ct., Maineville, OH 45039 | ) | |
| | ) | |
| **ERIC SHULTZ,** | ) | |
| 420 Layne Drive, Xenia, OH 45385 | ) | |
| | ) | |

1

**ERIK STEFFEN,** )
1540 Boyle Road, Hamilton, OH 45013 )
 )
**JENNIFER ROBB,** )
1540 Boyle Road, Hamilton, OH 45013 )
 )
**TAMARA SPENCER WARD,** )
20169 Fierce Ridge Road, Glouster, OH )
45732 )
**MICHAEL WARD,** )
 )
20169 Fierce Ridge Road, Glouster, OH )
45732 )
 )
**MARK MONDELLO,** )
424 Kehner Road, Mogadore, OH 44260 )
 )
**TRACY MONDELLO,** )
424 Kehner Road, Mogadore, OH 44260 )
 )
 )
       **Defendants.** )

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, Certain Underwriters at Lloyd's London subscribing to policy

number GLL-10784-00, by and through its attorneys Collins Roche Utley & Garner, LLC, and for

its Complaint for Declaratory Judgment against Defendants, POWER HOME SOLAR, LLC

D/B/A PINK ENERGY, F/K/A POWER HOME SOLAR & ROOFING, KIMBERLY AND

WILLIAM CLEVELAND, DAVID AND DEBBI HUTZELL, TERI WHITAKER, RICHARD

AND TRACY ANNON, DENISE FARAG, NICHOLAS NEILAND, ERIC SHULTZ, ERIK

STEFFEN AND JENNIFER ROBB, TAMARA SPENCER WARD AND MICHAEL WARD,

MARK AND TRACY MONDELLO, states as follows:

## NATURE OF ACTION

1.      CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NUMBER GLL-10784-00 ("Underwriters") brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure seeking a declaration with respect to the rights of the parties under a commercial general liability policy issued to Defendant, POWER HOME SOLAR, LLC ("PHS"), with respect to multiple Complaints filed against PHS by underlying plaintiffs, KIMBERLY AND WILLIAM CLEVELAND, DAVID AND DEBBI HUTZELL, TERI WHITAKER, RICHARD AND TRACY ANNON, DENISE FARAG, NICHOLAS HEILAND, ERIC SHULTZ, ERIK STEFFEN AND JENNIFER ROBB, TAMARA SPENCER WARD AND MICHAEL WARD, MARK AND TRACY MONDELLO (collectively "Underlying Plaintiffs").

2.      Underwriters issued policy No. GLL-10784-00 to "Power Home Solar, LLC" as the first named insured, effective from November 15, 2020 to November 15, 2021 (the "Underwriters Policy"). (A true and correct copy of the Underwriters Policy is attached hereto as **Exhibit A**).

3.      Underlying Plaintiffs seek damages for misrepresentations and negligence on the part of PHS related to the installation of its solar panel systems by PHS at Underlying Plaintiffs' respective residences.

4.      The following lawsuits were filed against PHS related to the installation of its solar panel systems: *Kimberly and William Cleveland v. Power Home Solar, LLC d/b/a Pink Energy, et al*., Case No 2023CV00730, filed in the Court of Common Pleas in Stark County (the "*Cleveland* Lawsuit"), *David and Debbi Hutzell v. Power Home Solar, LLC d/b/a Pink Energy, et al.*, Case No 2:22-CV-002930, filed in the United States District Court for the Southern District of Ohio,

Eastern Division (the "*Hutzell* Lawsuit"); *Teri Whitaker v. Power Home Solar, LLC d/b/a Pink Energy, et al.*, Case No 3:22-CV-00233, filed in the United States District Court for the Southern District of Ohio, Western Division (the "*Whitaker* Lawsuit"); *Richard and Tracey Annon v. Home Solar, LLC d/b/a Pink Energy, et al.*, Case No 2:22-CV-03174, filed in the United States District Court for the Southern District of Ohio, Eastern Division (the "*Annon* Lawsuit"); *Denise Farag v. Power Home Solar, LLC d/b/a Pink Energy, et al.*, Case No. 2:22-CV-00448, filed in the United States District Court for the Southern District of Ohio, Western Division (the "*Farag* Lawsuit"); *Nicholas Heiland v. Power Home Solar, LLC d/b/a Pink Energy, et al.*, Case No 1:22-CV-00437, filed in the United States District Court for the Southern District of Ohio, Eastern Division (the "*Heiland* Lawsuit"); *Eric Shultz v. Power Home Solar, LLC d/b/a Pink Energy, et al.*, Case No 3:22-CV-00223, filed in the United States District Court for the Southern District of Ohio, Western Division (the "*Shultz* Lawsuit"); *Erik Steffen & Jennifer Robb v. Power Home Solar, LLC d/b/a Pink Energy, et al.*, Case No 1:22-CV-00444, filed in the United States District Court for the Southern District of Ohio, Western Division (the "*Steffen* Lawsuit"); *Tamara Spencer Ward and Michael Ward v. Power Home Solar, LLC d/b/a Pink Energy, et al.*, Case No 2:22-CV-03149, filed in the United States District Court for the Southern District of Ohio, Eastern Division (the *Spencer Ward* Lawsuit"); and *Mark and Tracy Mondello v. Power Home Solar, LLC d/b/a Pink Energy, et al.*, Case No 5:22-cv-01238, filed in the United States District Court for the Northern District of Ohio, Eastern Division (the "*Mondello* Lawsuit") (collectively the "*PHS* Lawsuits"). True and correct copies the Complaints filed in the *PHS* Lawsuits are attached as **Group Exhibit B**.

5.      Underwriters seeks a declaratory judgment that it owes no duty to defend or indemnify PHS in connection with the PHS Lawsuits until PHS personally satisfies the Policy's

$250,000 per "occurrence" self-insured retention through payment of "claim expense" and damages. Underwriters also seeks a declaratory judgment that it owes no duty to defend or indemnify PHS in connection with the *Steffen* Lawsuit.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a), because there is complete diversity of citizenship amongst Plaintiff and Defendants. The amount in controversy exceeds $75,000, exclusive of interests and costs.

7.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this action occurred in this district.

## THE PARTIES

8.     Underwriters is, and at all relevant times has been, a foreign citizen located in London, England.

9.     PHS is a Delaware limited liability company with its principal place of business in Mooresville, North Carolina.

10.     Upon information and belief, Kimberly and William Cleveland reside in the City of Canal Fulton, County of Stark, and State of Ohio. Kimberly and William Cleveland are the plaintiffs in the *Cleveland* Lawsuit and are joined as defendants herein as necessary parties pursuant to Rule 19 of the Federal Rules of Civil Procedure and so that they may be bound by the judgment entered in this case. If Kimberly and William Cleveland execute a stipulation agreeing to be bound by any judgment entered herein, Underwriters will voluntarily dismiss them from this action.

11.     Upon information and belief, David and Debbi Hutzell reside in the City of Columbus, County of Franklin, and State of Ohio. David and Debbi Hutzell are the plaintiffs in

5

the *Hutzell* Lawsuit and are joined as defendants herein as necessary parties pursuant to Rule 19 of the Federal Rules of Civil Procedure and so that they may be bound by the judgment entered in this case. If David and Debbi Hutzell execute a stipulation agreeing to be bound by any judgment entered herein, Underwriters will voluntarily dismiss them from this action.

12. Upon information and belief, Teri Whitaker resides in the Village of Lewisburg, County of Preble, and State of Ohio. Teri Whitaker is the plaintiff in the *Whitaker* Lawsuit and is joined as defendant herein as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure and so that she may be bound by the judgment entered in this case. If Teri Whitaker executes a stipulation agreeing to be bound by any judgment entered herein, Underwriters will voluntarily dismiss her from this action.

13. Upon information and belief, Richard and Tracy Annon reside in the City of Chillicothe, County of Ross, and State of Ohio. Richard and Tracy Annon are the plaintiffs in the *Annon* Lawsuit and are joined as defendants herein as necessary parties pursuant to Rule 19 of the Federal Rules of Civil Procedure and so that they may be bound by the judgment entered in this case. If Richard and Tracy Annon execute a stipulation agreeing to be bound by any judgment entered herein, Underwriters will voluntarily dismiss them from this action.

14. Upon information and belief, Denise Farag resides in the Village of Maineville, County of Warren, and State of Ohio. Denise Farag is the plaintiff in the *Farag* Lawsuit and is joined as a defendant herein as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure and so that she may be bound by the judgment entered in this case. If Denise Farag executes a stipulation agreeing to be bound by any judgment entered herein, Underwriters will voluntarily dismiss her from this action.

15.     Upon information and belief, Nicholas Heiland resides in the City of Cinicnnati, County of Hamilton, and State of Ohio. Nicholas Heiland is the plaintiff in the *Heiland* Lawsuit and is joined as a defendant herein as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure and so that he may be bound by the judgment entered in this case. If Nicholas Heiland executes a stipulation agreeing to be bound by any judgment entered herein, Underwriters will voluntarily dismiss him from this action.

16.     Upon information and belief, Eric Shultz resides in the City of Xenia, County of Greene, and State of Ohio. Eric Shultz is the plaintiff in the *Shultz* Lawsuit and is joined as defendant herein as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure and so that he may be bound by the judgment entered in this case. If Eric Shultz executes a stipulation agreeing to be bound by any judgment entered herein, Underwriters will voluntarily dismiss him from this action.

17.     Upon information and belief, Erik Steffen and Jennifer Robb reside in the City of Hamilton, County of Butler, and State of Ohio. Erik Steffen and Jennifer Robb are the plaintiffs in the *Steffen* Lawsuit and are joined as defendants herein as necessary parties pursuant to Rule 19 of the Federal Rules of Civil Procedure and so that they may be bound by the judgment entered in this case. If Erik Steffen and Jennifer Robb execute a stipulation agreeing to be bound by any judgment entered herein, Underwriters will voluntarily dismiss them from this action.

18.     Upon information and belief, Tamara Spencer Ward and Michael Ward reside in the City of Glouster, County of Athens, and State of Ohio. Tamara Spencer Ward and Michael Ward are the plaintiffs in the *Spencer Ward* Lawsuit and are joined as defendants herein as necessary parties pursuant to Rule 19 of the Federal Rules of Civil Procedure and so that they may be bound by the judgment entered in this case. If Tamara Spencer Ward and Michael Ward execute

a stipulation agreeing to be bound by any judgment entered herein, Underwriters will voluntarily dismiss them from this action.

19.     Upon information and belief, Mark and Tracy Mondello reside in the City of Mogadore, County of Portage, and State of Ohio. Mark and Tracy Mondello are the plaintiffs in the *Mondello* Lawsuit and are joined as defendants herein as necessary parties pursuant to Rule 19 of the Federal Rules of Civil Procedure and so that they may be bound by the judgment entered in this case. If Mark and Tracy Mondello execute a stipulation agreeing to be bound by any judgment entered herein, Underwriters will voluntarily dismiss them from this action.

## FACTUAL BACKGROUND

### I.     GENERAL ALLEGATIONS OF THE *PHS* LAWSUITS

20.     The operative pleadings in the *PHS* Lawsuits are all in Amended Complaints filed on February 21, 2023.

21.     The *PHS* Lawsuits all contain substantially similar allegations arising out of the installation of solar panel systems at the Underlying Plaintiffs' respective residences[1].

22.     The *PHS* Lawsuits also name Jayson Waller ("Waller"), GoodLeap, LLC ("GoodLeap"), and Trivest Partners, L.P. ("Trivest") as defendants. The *PHS* Lawsuits collectively refer to PHS, Waller, and Trivest as the "Pink Energy Group."

23.     Waller was allegedly the founder and Chief Executive Officer of PHS. Trivest is/was a limited partnership involved in the management and day-to-day operations of PHS.

24.     GoodLeap is/was a limited liability company which was allegedly acting in concert with the Pink Energy Group by providing financing to Underlying Plaintiffs in the purchase of the PHS solar panel systems.

---

[1] The allegations in the *Cleveland* Lawsuit differ slightly from the allegations in the remaining *PHS* Lawsuits. However, these differences do not alter Underwriters' coverage position as it relates to all of the *PHS* Lawsuits.

25.     The *PHS* Lawsuits allege that at various points between summer 2018 and winter 2021, Underlying Plaintiffs individually began to initiate a search for vendors licensed to sell, install, and maintain solar equipment in order to utilize a more efficient and environmentally friendly energy source for their homes.

26.     The *PHS* Lawsuits allege that at various points between October 2018 and August 2021, Underlying Plaintiffs entered into Sale Agreements with PHS to install solar energy panels on the roof at their respective residences.

27.     The *PHS* Lawsuits allege that at various points between September 2018 and January 2022, the solar panel systems were installed at Underlying Plaintiffs' residences.

28.     The *PHS* Lawsuits allege that the solar panel systems were never fully or consistently active, despite PHS's representations to the contrary.

29.     Since installation and alleged activation, the solar panel systems allegedly failed to produce the kilowatt hours contracted for with PHS.

30.     The *PHS* Lawsuits allege that the solar panel systems, on average, generate significantly lower output than was quoted in the Sales Agreements.

31.     The *PHS* Lawsuits allege that despite the representations made by PHS, the solar panel systems have never provided the cost savings or energy production promised by PHS.

32.     The *PHS* Lawsuits allege that Underlying Plaintiffs continued to try and work with PHS regarding their issues with the solar panel systems, but that PHS has failed to fix the issues and have since ignored Underlying Plaintiffs' calls for customer support.

33.     The *PHS* Lawsuits assert multiple causes of action against PHS, including, but not limited to, breach of contract, fraudulent misrepresentation, fraud in the inducement/execution, breach of warranty, civil conspiracy, and negligence.

9

## II.    THE BANKRUPTCY ACTION

34.    On October 7, 2022, a bankruptcy case styled, *In Re: Power Home Solar, LLC*, Case No. 22-50228 Chapter 7, was filed in the United States Bankruptcy Court for the Western District of North Carolina, Charlotte Division (the "Bankruptcy Action").

35.    On December 2, 2022, Plaintiffs in the *PHS* Lawsuits filed a Motion for Order Granting Limited Relief from Automatic Stay (the "Bankruptcy Motion").

36.    The Bankruptcy Motion alleges that "Plaintiffs believe that their claims will be covered by adequate insurance policies that PHS had in effect at the time the negligent and wrongful conduct occurred."

37.    In the Bankruptcy Motion, Underlying Plaintiffs requested "that the Bankruptcy Court enter an order lifting the automatic stay in the Bankruptcy Action for the sole purpose of allowing them to litigate and potentially settle claims against PHS and collect insurance proceeds from PHS's liability insurance carriers, or to collect from other liable parties (other than the Debtor)."

38.    On January 20, 2023, the court in the Bankruptcy Action granted the Bankruptcy Motion (the "Bankruptcy Order"), which limits the Underlying Plaintiffs to recovering a judgment against PHS from PHS's insurance policies.

39.    Underwriters advised PHS that it was PHS's obligation to satisfy the SIR, including defending itself in the *PHS* Lawsuits.

40.    PHS has failed to retain defense counsel to defend the *PHS* Lawsuits.

41.    Underwriters therefore retained defense counsel to defend PHS, while reserving rights under the Underwriters Policy.

10

## THE UNDERWRITERS POLICY

42.     Underwriters issued the Underwriters Policy. *See* Ex. A.

43.     Pursuant to the Insuring Agreement, the Underwriters Policy generally provides coverage for those amounts that the insured becomes legally obligated to pay as damages for "property damage" caused by an "occurrence," where the damage takes place during the policy period. *See* Ex. A, p. 033.

44.     The Underwriters Policy contains the following exclusions commonly known as the "business risk" exclusions:

j.     **Damage To Property**

"Property damage" to:

\* \* \*

**(5)**     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph **(6)** of this exclusion does Not apply to "property damage" included in the "products-completed operations hazard".

\* \* \*

k.     **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l.     **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damages arises was performed on your behalf by a subcontractor.

11

*See* Ex. A, pp. 036-037.

45.    The Underwriters Policy defines the terms "your work," 'your product," as follows:

**22.**    "Your work":

    a.    Means:

        **(1)**    Work or operations performed by you or on your behalf; and

        **(2)**    Materials, parts or equipment furnished in connection with        such work or operations.

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        **(2)**    The providing of or failure to provide warnings or instructions.

* * *

**21.**    "Your product":

    **a.**    Means:

    **b.**

        **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)**    You;

            **(b)**    Others trading under your name; or

            **(c)**    A person or organization whose business or assets you have acquired; and

        **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2)   The providing of or failure to provide warnings or instructions.

c.   Does Not include vending machines or other property rented to or located for the use of others but not sold

*See* Ex. A, p. 048.

46.     The Underwriters Policy includes coverage with limits of $1 million per occurrence for Bodily Injury and Property Damage and $3 million in the General Aggregate. *See* Ex. A, p. 006.

47.     The Underwriters Policy contains a Self-Insured Retention – Claims Expenses Eroding The Retention endorsement (the "SIR Endorsement"), which modifies Underwriters' obligations under the Underwriters Policy. *See* Ex. A, pp. 024-029.

48.     The SIR Endorsement provides, in pertinent part, as follows:

### SELF-INSURED RETENTION – CLAIM EXPENSES ERODING THE RETENTION

**Schedule Each Occurrence "Self-Insured Retention" Amount: $250,000**
**Each Claim "Self-Insured Retention" Amount: $N/A**
**Aggregate "Self-Insured Retention" Amount** (if applicable): $N/A
**Third Party Claims Administrator:** Sedgwick
**Address:** 12650 Ingenuity Drive, Orlando, FL 32826
**Contact:** Kristin N. Smith
**Telephone:** 352-805-3744

This insurance is subject to the following additional provisions. In the event of conflict with any provision elsewhere in the coverage form, the provisions of this endorsement will control the application of insurance to which the coverage part applies.

**I. COVERAGE:**

Our obligation to pay sums under **SECTION I, 1. Insuring Agreement** of this Coverage Part for damages to which this insurance applies, and our obligation to defend you against any claim or "suit" because of those damages is changed as set out below.

**1.** We will only pay that portion of the "Ultimate Net Loss" to which this insurance applies that is in excess of the "Self-Insured Retentions" shown

13

in the Schedule above. Before we have any obligation to pay any of the "Ultimate Net Loss", you must pay the full amount of the applicable "Self-Insured Retention" Amount shown in the Schedule regardless of Insolvency or bankruptcy by you or the number of claims or "suits" or amount of "claims expense". In no event shall this policy be obligated to satisfy your obligations for payment of "Self Insured Retention" amounts or "claim expense".

    **a.** The **Each Occurrence "Self-Insured Retention" Amount** listed in the Schedule applies to:

        **(1)** All covered damages and "claims expense" as a result of an "occurrence" under the **COMMERCIAL GENERAL LIABILITY COVERAGE PART** and/or the **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**, and/or […]

*See* Ex. A, p. 024.

    49.    The Additional Definitions section of the SIR Endorsement provides as follows:

**III. Additional Definitions**

The following definitions are added to **SECTION V. DEFINITIONS**:

**1.** "Claims expense" means all fees, costs and expenses incurred in the investigation, defense and settlement of any claim or "suit" under this insurance, including but not limited to attorney's fees, court reporter fees, charges for independent medical examinations, and expert witnesses. "Claims expense" will not include salaried employees, counsel on retainer and office expenses of either you or us.

**2.** "Self-Insured Retention" means the amount of liability shown in the Schedule above for either the **Each Occurrence "Self-Insured Retention" Amount** or the **Aggregate "Self-Insured Retention" Amount** (if shown) which you shall become legally obligated to pay because of "bodily injury", "property damage", "advertising injury", "personal injury", "medical payments" or any other such coverage included in the policy sustained by one or more persons or organizations.

**3.** "Ultimate Net Loss" means the sum or sums, after deduction of all collectible recoveries or salvage, that are:
    **a.** In excess of the "Self-Insured Retention"; and
    **b.** Actually paid or that you are obligated to pay as damages and "claims expense" in the investigation and satisfaction of claims or "suits" to which this insurance applies.

*See* Ex. A, p. 029.

50.     The Defense and Settlement of Claims and Suits section of the SIR Endorsement

provides as follows:

**2. Defense and Settlement of Claims and Suits**

**a. Your obligations:**

**(1)** The defense of claims and "suits" seeking damages to which this
policy applies that are within the "Self-Insured Retention" and
payment of all "claims expense" that are within the "Self-Insured
Retention" are your obligations, however;

\*\*\*

**(2)** Your responsibility to pay all amounts of settlements and judgments,
including "claims expense", within the "Self-Insured Retention"
shall not be affected by our election to assume the handling of any
claim or suit.

*See* Ex. A, p. 025.

51.     The SIR Endorsement further states:

**b. Defense by us:**

**(1)** We have the right and the duty to investigate and defend that part of
any claim or "suit" that seeks damages to which this insurance
applies that are in excess of the "Self-Insured Retention", or which,
in our opinion, may expose us to a payment under this policy.

**(2)** Our duty to investigate and defend claims or "suits" and/or to pay
"claims expense" applies only after the "Self-Insured Retention" has
been paid out in satisfaction or settlement of claims or "suits", or
paid out in "claims expense".

*See* Ex. A, p. 026.

52.     The Settlement section of the SIR Endorsement provides, in pertinent part, as

follows:

**d. Settlement:**

\*\*\*

15

(2) We shall be liable only for the amount of damages and "claims expense" in excess of the "Self Insured Retention" amounts as applicable, shown in the Schedule above, up to the applicable Limits of Insurance shown in the Declarations of this policy and as described in **SECTION III – LIMITS OF INSURANCE.**

(3) Payments by others, including but not limited to additional insured's and insurers, cannot be used to settle a claim or satisfy a judgment owed by an insured within the "Self-Insured Retention". Only payments by the first Named Insured can settle a claim or satisfy a judgment owed by an insured within the "Self-Insured Retention".

*See* Ex. A, p. 027.

## <u>COUNT I – DECLARATORY JUDGMENT</u>
### <u>(Underwriters Owes No Coverage Until The SIR Is Satisfied By PHS)</u>

53.     Underwriters adopts and re-alleges the allegations in Paragraphs 1 through 52 as if fully restated and set forth herein as paragraph 52.

54.     The SIR Endorsement of the Underwriters Policy states that the SIR is $250,000.

55.     The Underwriters Policy provides that Underwriters will only pay that portion of the "Ultimate Net Loss" that is in excess of the SIR.

56.     The "Ultimate Net Loss" requires that the sums be in excess of the SIR and actually paid as damages and "claims expenses" in the investigation and satisfaction of claims or "suits."

57.     Underwriters has no obligation to pay any of the "Ultimate Net Loss" until the insured has paid the full amount of the SIR, regardless of insolvency or bankruptcy of the insured, and under no circumstance shall Underwriters be responsible for the payments of the SIR.

58.     The Underwriters Policy provides that the insured is obligated to pay for the defense of "suits" seeking damages within the SIR.

59.     The Underwriters Policy provides that Underwriters has the right and duty to investigate and defend any part of a "suit" seeking damages to which this insurance applies that is

in excess of the SIR. However, this duty only applies after the SIR has been paid in satisfaction or settlement of claims or "suits," or paid out in "claims expense."

60.     The Underwriters Policy provides that the insured cannot satisfy the SIR with any payments from others, to include additional insureds or insurers.

61.     As such, it is a condition precedent to coverage that the Named Insured pay the SIR before Underwriters has any obligations under the Underwriters Policy.

62.     An actual controversy exists between Underwriters, Underlying Plaintiffs and PHS, and by the terms and provisions of 28 U.S.C. §§ 2201, 2202, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as may be necessary.

WHEREFORE, Plaintiff, Underwriters, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Underwriters Policy;

b.     Find and declare that the PHS must personally satisfy the $250,000 SIR before Underwriters owes any obligations under the Underwriters Policy; and

c.     Grant Underwriters such other and further relief that the Court deems proper under the facts and circumstances.

### COUNT II – DECLARATORY JUDGMENT
### (Underwriters Owes No Duty To Defend Or Indemnify PHS)

63.     Underwriters adopts and re-alleges the allegations in Paragraphs 1 through 61 as if fully restated and set forth herein as paragraph 62.

64.     PHS filed for Chapter 7 bankruptcy.

65.     To the extent Underlying Plaintiffs in the *PHS* Lawsuits are awarded judgment against PHS, Underlying Plaintiffs cannot seek recovery of that judgment from PHS pursuant to Bankruptcy Order.

66.     Pursuant to the SIR Endorsement, Underwriters has no obligation to pay any of the "Ultimate Net Loss" until the insured has paid the full amount of the SIR, regardless of insolvency or bankruptcy of the insured, and under no circumstance shall Underwriters be responsible for the payments of the SIR.

67.     PHS cannot satisfy the SIR for damages awarded in favor of Underlying Plaintiffs because of the Bankruptcy Order.

68.     Because PHS cannot satisfy the SIR, Underwriters does not owe a duty to defend of indemnify PHS in connection with the *PHS* Lawsuits.

69.     Because Underwriters does not owe a duty to defend or indemnify PHS in the connection with the *PHS* Lawsuits, Underwriters cannot be liable to Underlying Plaintiffs as a judgment creditor of PHS.

70.     An actual controversy exists between Underwriters, Underlying Plaintiffs and PHS, and by the terms and provisions of 28 U.S.C. §§ 2201, 2202, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as may be necessary.

WHEREFORE, Plaintiff, Underwriters, respectfully prays that this Honorable Court:

a.  Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Underwriters Policy;

b.  Find and declare that Underwriters does not owe a duty to defend or indemnify PHS under the Underwriters Policy in connection with the *PHS* Lawsuits.

c.  Find and declare that Underlying Plaintiffs, as potential judgment creditors of PHS, cannot recover a judgment against PHS under the Underwriters Policy; and

d.  Grant Underwriters such other and further relief that the Court deems proper under the facts and circumstances.

18

## COUNT III – DECLARATORY JUDGMENT
### (PHS Must Satisfy SIR For Each Lawsuit)

71.     Underwriters adopts and re-alleges the allegations in Paragraphs 1 through 70 as if fully restated and set forth herein as paragraph 71.

72.     The SIR applies to "Each Occurrence" separately.

73.     PHS must satisfy the SIR amount for each "occurrence" for which it is found liable.

74.     Each individual PHS Lawsuit constitutes a separate "occurrence" under the Underwriters Policy and is subject to a separate SIR.

75.     As such, PHS must satisfy the SIR for each individual lawsuit before Underwriters is under any obligation to pay any of the "Ultimate Net Loss" toward that individual lawsuit.

76.     An actual controversy exists between Underwriters, Plaintiffs and PHS, and by the terms and provisions of 28 U.S.C. §§ 2201, 2202, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as may be necessary.

WHEREFORE, Plaintiff, Underwriters, respectfully prays that this Honorable Court:

a.      Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Underwriters Policy;

b.      Find and declare that each individual lawsuit brought against PHS constitutes a separate "occurrence" under the Underwriters Policy;

c.      Find and declare that PHS must satisfy the SIR for each individual PHS lawsuit;

d.      Grant Underwriters such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT IV – DECLARATORY JUDGMENT
### (No Duty To Defend Or Indemnify PHS For The *Steffen* Lawsuit)

77.     Underwriters adopts and re-alleges the allegations in Paragraphs 1 through 76 as if fully restated and set forth herein as paragraph 76.

78.     The Underwriters Policy generally provides coverage for those amounts that PHS becomes legally obligated to pay as damages for "bodily injury" caused by an "occurrence," where the injury takes place during the policy period.

79.     The Underwriters Policy provided coverage from November 15, 2020 to November 15, 2021.

80.     The *Steffen* Lawsuit alleges that the solar panel systems were installed at Plaintiff's residence in December 2021/January 2022.

81.     Accordingly, any alleged "property damage" in the *Steffen* Lawsuit would have occurred after the policy period, and therefore, fails to satisfy the Insuring Agreement of the Underwriters Policy.

82.     To the extent that the Court finds that Underwriters owes a duty to defend PHS against some of the *PHS* Lawsuits, Underwriters has and had no duty to defend or indemnify PHS for the claims asserted against it in the *Steffen* Lawsuit.

83.     An actual controversy exists between Underwriters, Underlying Plaintiffs and PHS, and by the terms and provisions of 28 U.S.C. §§ 2201, 2202, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as may be necessary.

WHEREFORE, Plaintiff, Underwriters, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Underwriters Policy;

b.     Find and declare that the *Steffen* Lawsuit fails to allege "property damage" caused by an "occurrence" within the policy period;

c.     Find and declare that Underwriters has and had No duty under the Underwriters Policy to defend or indemnify PHS for *Steffen* Lawsuit;

d.     Grant Underwriters such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT V – DECLARATORY JUDGMENT
### (No Covered "Property Damage")

84.    Underwriters adopts and re-alleges the allegations in Paragraphs 1 through 83 as if fully restated and set forth herein as paragraph 83.

85.    The Underwriters Policy generally provides coverage for those amounts that the insured becomes legally obligated to pay as damages for "property damage" caused by an "occurrence," where the damage takes place during the policy period.

86.    The "business risk" exclusions of the Underwriters Policy preclude coverage for "property damage" related to the repair and replacement of PHS's own work.

87.    The *PHS* Lawsuits fail to identify "property damage" caused by an "occurrence," beyond that of PHS's own work.

88.    As such, Underwriters does not owe a duty to defend or indemnify PHS in connection with the *PHS* Lawsuits.

89.    An actual controversy exists between Underwriters, Underlying Plaintiffs and PHS, and by the terms and provisions of 28 U.S.C. §§ 2201, 2202, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as may be necessary.

WHEREFORE, Plaintiff, Underwriters, respectfully prays that this Honorable Court:

a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Underwriters Policy;

b.    Find and declare that the *PHS* Lawsuits fail to allege "property damage" beyond that of PHS's own work;

c.    Find and declare that Underwriters has and had no duty under the Underwriters Policy to defend or indemnify PHS for *PHS* Lawsuits;

    d.      Grant Underwriters such other and further relief that the Court deems proper under the facts and circumstances.

Respectfully submitted,

RICHARD M. GARNER (061734)
Email: rgarner@cruglaw.com
JAREN B. WEBSTER (0096619)
Email: jwebster@cruglaw.com
COLLINS, ROCHE, UTLEY & GARNER LLC
655 Metro Place South, Suite 200
Dublin, OH  43017
PH: (614) 901-9600
Fax: (614) 901-2723

*Attorneys for Plaintiffs*