## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **CERTAIN UNDERWRITERS AT** | : | **Case No. 2:23-cv-03891-ALM-EPD** |
| **LLOYD'S LONDON,** | : | |
| | : | |
| **Plaintiff,** | : | **Judge Algenon L. Marbley** |
| | : | **Magistrate Judge Elizabeth Preston Deavers** |
| **v.** | : | |
| | : | |
| **POWER HOME SOLAR, LLC D/B/A** | : | |
| **PINK ENERGY, F/K/A POWER HOME,** | : | |
| **et al.** | : | |
| | : | |
| **Defendants.** | : | |

### OPINION & ORDER

This matter is before this Court on Plaintiff's Motion for Default Judgment. (ECF No. 47). For the reasons set forth below, Plaintiff's Motion is **GRANTED** and a **DEFAULT JUDGMENT** is entered in favor of Plaintiff.

### I.     BACKGROUND

This case arises from multiple lawsuits against Defendant Power Power Home Solar, LLC d/b/a Pink Energy, f/k/a Powerhome Solar & Roofing ("PHS"), each regarding the alleged improper installation of solar panels on the homes of the individual defendants in this case (collectively Underlying Plaintiffs).[1] (ECF No. 30, ¶¶ 1-4). Certain Underwriters at Lloyd's, London subscribing to policy number Gll-10784-00 ("Underwriters"), issued an insurance policy to PHS, effective November 15, 2020 to November 15, 2021 ("Underwriters Policy"). (*Id*. ¶ 2). In light of the underlying litigation, Underwriters seek a declaratory judgment pursuant to 28 U.S.C. §§ 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure. (*Id*. ¶ 1).

---

[1] Kimberly And William Cleveland, David And Debbi Hutzell, Teri Whitaker, Richard And Tracy Annon, Denise Farag, Nicholas Heiland, Eric Shultz, Erik Steffen And Jennifer Robb, Tamara Spencer Ward And Michael Ward, Mark And Tracy Mondello, Robert Hendershot, And Nick Applegarth

As such, Underwriters filed its Complaint seeking declaratory judgment that: (1) it owes no duty to defend or indemnify PHS in connection with the PHS lawsuits until PHS personally satisfies the Policy's $250,000 per "occurrence" self-insured retention through payment of "claim expense" and damages; and (2) that it owes no duty to defend or indemnify PHS in connection with the Steffen Lawsuit, Hendershot Lawsuit, or Applegarth Lawsuit. (*Id.* ¶ 5).

## A. The Underwriters Policy

The Underwriters Policy was issued to PHS in Mooresville, North Carolina, PHS's principal place of business. (ECF No. 30 ¶ 9, ECF No. 47 at 9). The Policy provided coverage for "those amounts that the insured becomes legally obligated to pay as damages for "property damage" caused by an 'occurrence,' where the damage takes place during the policy period." (ECF Nos. 30 ¶ 46). The insurance policy also contains certain "business risk" exclusions, and a Self-Insured Retention – Claims Expenses Eroding The Retention endorsement (the "SIR Endorsement") that modifies Underwriters' obligations. (ECF No. 47 ¶ 50). According to the Underwriters Policy, Underwriters will only pay the portion of the "Ultimate Net Loss" that exceeds the SIR set at $250,000. (ECF No. 30 ¶¶ 57-58). Underwriter is not required to pay any of the "Ultimate Loss" until the insured has paid the full amount of the SIR, regardless of insolvency or bankruptcy. (*Id.* ¶ 60, ECF 47 at 2, Exhibit E at 24). Furthermore, the insured is obliged to pay for the defense of lawsuits seeking damages within the SIR. (*Id*. ¶¶ 53, 61). The included coverage has a limit of $1 million per occurrence for Bodily Injury and Property Damage and $3 million in the General Aggregate. (ECF 30, ¶ 49).

## B. The PHS Lawsuits

At various points between October 2018 and August 2021, the Underlying Plaintiffs entered into Sales Agreements with Defendant PHS to install solar energy panels at their respective

residences. (ECF No. 30 ¶ 1, 29). Between September 2018 and January 2022, the solar panel systems were installed but allegedly were never fully or consistently active. (*Id.* ¶ 31). Underlying Plaintiffs attempted to work with PHS to resolve the issues, which included the solar panel systems failing to provide the kilowatt hours contracted for, falling short of generating the output quoted in the Sales Agreements, and not providing the promised cost savings or energy production. (*Id.* ¶¶ 32-35). Accordingly, the Underlying Plaintiffs filed lawsuits related to the installation of the solar panel systems asserting causes of action for breach of contract, fraudulent misrepresentation, fraud in the inducement/execution, breach of warranty, civil conspiracy, and negligence, among others (collectively the "*PHS* Lawsuits"). (*Id.* ¶ 36).

### C.  The Bankruptcy Action

On October 7, 2022, a bankruptcy case, *In Re: Power Home Solar, LLC*, Case No. 22-50228 Chapter 7, was filed in the United States Bankruptcy Court for the Western District of North Carolina, Charlotte Division (the "Bankruptcy Action"). (ECF No. 30 ¶ 37). Underlying Plaintiffs responded by filing a Motion for Order Granting Limited Relief from Automatic Stay ("Bankruptcy Motion"). (*Id.* ¶ 38). The Bankruptcy Motion indicates that Underlying Plaintiffs believe PHS's insurance policies at the time of the conduct at issue will cover their claims. (*Id.* ¶ 39). The Bankruptcy Court granted the Bankruptcy Motion on January 20, 2023, and lifted the automatic stay to allow the Underlying Plaintiffs the possibility of litigating and settling claims against PHS under PHS's insurance policies. (*Id.* ¶ 40-41).

Underwriters had issued a commercial general liability insurance policy ("Underwriters Policy"), effective November 15, 2020 to November 15, 2021, to PHS. (ECF No. 47 at 5, Exhibit E at 6). The Underwriters Policy was issued to PHS in Mooresville, North Carolina, PHS's principal place of business. (ECF No. 30 ¶ 9, ECF No. 47 at 9).

During the policy period, the Underwriters Policy generally covers "those amounts that the insured becomes legally obligated to pay as damages for 'property damage' caused by an 'occurrence[.]'" (ECF No. 30 ¶ 46, Exhibit E at 33). The insurance policy also contains certain "business risk" exclusions, and a Self-Insured Retention – Claims Expenses Eroding The Retention endorsement (the "SIR Endorsement") that modifies Underwriter's obligations. (ECF No. 47 ¶ 50, Exhibit E at 24). According to the Underwriters Policy, Underwriters will only pay the portion of the "Ultimate Net Loss" that exceeds the SIR set at $250,000. (ECF No. 30 ¶¶ 57-58, Exhibit E at 24, 29). Underwriters are not required to pay any of the "Ultimate Loss" until the insured has paid the full amount of the SIR, regardless of insolvency or bankruptcy. (*Id.* ¶ 60, ECF 47 at 2). Furthermore, the insured is also obliged to pay for the defense of lawsuits seeking damages within the SIR. (ECF No. 30, ¶¶ 53, 61). The included coverage has a limit of $1 million per occurrence for Bodily Injury and Property Damage and $3 million in the General Aggregate. (ECF 30, ¶ 49).

After the Bankruptcy Court granted Underlying Plaintiffs' Bankruptcy Motion, Underwriters advised PHS that it had an obligation to satisfy the Self-Insured Retention, in part by defending itself in the *PHS* Lawsuit, which PHS failed to do. (*Id.* ¶¶ 42-43). While reserving rights under the Underwriters Policy, Underwriters therefore retained counsel themselves to defend the insured against the *PHS* Lawsuit. (ECF No. 30 ¶ 44).

On November 21, 2023, Underwriters initiated the current lawsuit through a Complaint for Declaratory Judgment "seeking a judicial declaration that it does not owe any duties or coverage to Defendant in connection with the *PHS* Lawsuit under a liability policy[.]" (ECF Nos. 1; 47 at 2). On January 11, 2024, Waivers of Service were entered for fifteen of the individual defendants named in the lawsuit. (ECF Nos. 8-22). On January 19, 2024, Underwriters filed an Amended

Complaint for Declaratory Judgment on January 19, 2024, and a Second Amended Complaint for Declaratory Judgement on June 28, 2024. (ECF No. 23, 30).

On September 10, 2024, Underwriters filed an Application to Clerk for entry of default against defendants PHS and seventeen other defendants. (ECF No. 39). The Clerk's Entry of Default was entered on September 12, 2024. (ECF No. 41). On September 27, 2024, Underwriters filed an Application to Clerk for entry of default against two additional individual defendants. (ECF No. 42, 44). The Clerk's Entry of Default against those individuals was entered on September 30, 2024. (ECF No. 46).

On February 12, 2024, Underwriters filed a Motion for Default Judgment against Defendant. (ECF No. 47). Defendant has not responded.

## II.    LAW & ANALYSIS

Underwriters filed a Complaint for Declaratory Judgment. (ECF No. 30). Upon P HS's and the Underlying Plaintiffs' failure to answer or otherwise respond, the Clerk of Court entered default against all Defendants. (ECF Nos. 41, 46). Underwriters now move for default judgment declaring no coverage is available under the Underwriters Policy in connection with the PHS Lawsuits. (ECF No. 47 at 3).

Courts may grant default judgment in actions involving the question of coverage under insurance policies. *See., e.g.*, *Freeman v. State Farm Mut. Auto. Ins. Co.*, 436 F.3d 1033, 1034 (8th Cir. 2006).[2]  Even so, "[a] clerk's entry of default is not a guarantee that a court's entry of default

---

[2]      The Sixth Circuit has recommended that to avoid inconsistent verdicts, courts should generally withhold granting default judgment against a single defendant in a multi-defendant case before a determination of the merits involving the other defendants. *Kimberly v. Coastline Corp.*, 857 F.2d 1474, at *3 (6th Cir. 1988)(per curiam). However, this should not affect the consideration of the Plaintiff's complaint here, as all the Clerk of Court has entered default against all defendants.

judgment is going to follow in a suit arising under the Declaratory Judgment Act." *Allstate Ins. Co. v. Cantrell Funeral Home Inc.*, 506 F. Supp. 3d 529, 541 (E.D. Mich. 2020). Courts must be cautious to avoid "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

Accordingly, before granting relief, this Court must determine whether it should exercise jurisdiction under the Declaratory Judgment Act. Though not addressed by any party, this Court will next address the relevant analysis.

### A. Declaratory Judgment Act

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States ... *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis added).[3] The act confers "'unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Massachusetts Bay Ins. Co. v. Christian Funeral Directors, Inc.*, 759 F. App'x 431, 435 (6th Cir. 2018) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008)).

To "guide the exercise of discretion," the Sixth Circuit has identified five factors to consider:

> (1) Whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"

---

[3] The Act does not provide an independent basis for jurisdiction. Rather, it provides courts with discretion to fashion a remedy in cases where federal jurisdiction already exists. *Heydon v. MediaOne of Southeast Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003). In the present matter, the jurisdiction of this Court arises out of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; [which is determined by asking]
    a. whether the underlying factual issues are important to an informed resolution of the case;
    b. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
    c. whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action; and
(5) whether there is an alternative remedy which is better or more effective.

*Christian Funeral Directors, Inc*., 759 F. App'x at 435 (alteration in original) (quoting *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 758 (6th Cir. 2014)). Although Underwriters have not addressed these factors, the Court finds they weigh in favor of exercising jurisdiction.

*Factors 1 & 2: Settling the Controversy and Clarifying Legal Relations*. Courts tend to consider these factors together, reaching the same conclusion for both. *Christian Funeral Directors*, Inc., 759 F. App'x at 438. A declaration that no coverage is owed would conclusively settle the coverage dispute between the parties and serve a useful purpose in clarifying the rights and obligations under the Policy. It would answer the question as to the scope of insurance coverage or duties in connection with the PHS Lawsuits. (ECF No. 47 at 2). Indeed, courts often find these factors weigh in favor of exercising jurisdiction in cases where a declaratory judgment would settle the controversy regarding the scope of insurance coverage. *Northland Ins. Co. v. Stewart Title Guar. Co*., 327 F.3d 448, 454 (6th Cir. 2003). As courts have recognized, "a prompt declaration of policy coverage would surely 'serve a useful purpose in clarifying the legal relations at issue.'" *Id*. (quoting *Scottsdale Ins. Co. v. Roumph,* 18 F.Supp.2d 730, 735 n. 5 (E.D.Mich.1998), *aff'd,* 211 F.3d 964, 968 (6th Cir.2000)). Accordingly, these factors strongly support the exercise of jurisdiction

*Factor 3: Procedural Fencing*. There is no evidence or arguments on the record of "procedural fencing" or a "race for res judicata." This factor "is meant to preclude jurisdiction for

'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum.'" *Flowers*, 513 F.3d at 558 (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)).

Courts, however, are cautioned against "imput[ing] an improper motive to a plaintiff where there is no evidence of such in the record." *Id.*; *Christian Funeral Directors, Inc*., 759 F. App'x at 438. As such, without any such evidence to assess, this factor is neutral.

*Factor 4: Friction Between Federal and State Courts*. Although the PHS Lawsuits address claims such as breach of contract, negligence, and fraud related to the installation of solar panels, the issue before this Court is insurance policy interpretation. This Court is well-equipped to interpret the insurance contract at issue. Under these circumstances, "[n]o state law or policy would be frustrated by" this Court's "exercise of jurisdiction, which would require the application of [state] law." *Northland Ins. Co. v. Stewart Title Guar. Co*., 327 F.3d 448, 454 (6th Cir. 2003) (finding a "district court's exercise of jurisdiction would not create friction between the state and federal courts" when insurer was not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend was before the state court."). Thus, the fourth factor also weighs in favor of jurisdiction.

*Factor 5: Availability of a Better Alternative Remedy*. Finally, although a state-court declaratory-judgment action may be preferable in some circumstances, that remedy is not clearly better or more effective here. Defendants have failed to participate in this litigation or suggest an alternative forum. As such, "it is not clear whether such alternative remedies are better or more effective than a federal declaratory action." *Cantrell Funeral Home Inc*., 506 F. Supp. 3d at 545. (quoting *Scottsdale Ins. Co.*, 513 F.3d at 562). This factor is therefore neutral.

Balancing all five factors, this Court concludes that exercising jurisdiction under the Declaratory Judgment Act is appropriate. The Court now turns to the motion for default judgment.

## B. Default Judgment

Rule 55 of the Federal Rules of Civil Procedure lays out a two-step process for default judgments. *See* Fed. R. Civ. P. 55. First, the plaintiff must apply for and obtain an entry of default from the Clerk of Court. Fed. R. Civ. P. 55(a). They may then apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). Although the plaintiff is not automatically entitled to a default judgment after the entry of default, courts generally accept well-pled factual allegations as true when considering a motion for default judgment. *Methe v. Amazon.com.dedc, LLC*, No. 1:17-CV-749, 2019 WL 3082329, *1 (S.D. Ohio July 15, 2019); *J & J Sports Prods. v. Rodriguez*, 2008 U.S. Dist. LEXIS 96499, *2 (N.D. Ohio Nov. 25, 2008). The plaintiff bears the burden of showing that "when all factual allegations in the complaint are taken as true, the defendant is liable for the claim(s) asserted." *Methe v. Amazon.com.dedc*, *2 (S.D. Ohio July 15, 2019).

When considering whether to enter default judgment, the Sixth Circuit instructs courts to consider the following factors:

> (1) possible prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) possible disputed material facts; (6) whether the default was due to excusable neglect; and (7) the preference for decisions on the merits.

*Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002) (citing *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986); *Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990); and *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 193–94 (6th Cir. 1986)).

Underwriters did not address the *Russell* factors when requesting default judgment. Nonetheless, this Court notes that Underwriters have applied for, and obtained, an entry of

default from the Clerk of Court, and have also submitted the present Motion pursuant to Fed. R. Civ. P. 55. As such, this Court will proceed to the relevant analysis.

*1. Sufficient and Meritorious Claim*

Underwriters' Second Amended Complaint seeks a declaratory judgment that it does not owe any duties or coverage to PHS in connection with the *PHS* Lawsuit until PHS has satisfied the $250,000 SIR. The Second Amended Complaint adequately alleges the essential elements of a declaratory judgment action. It clearly identifies the policy in question, the relevant provisions at issue, the conduct giving rise to the dispute, and the specific declarations sought. As such, the pleading is sufficient under Rule 8 and supports entry of default judgment.

To decide whether Underwriter's Second Amended Complaint establishes a meritorious claim, this Court must first determine which state's laws govern the interpretation of the Underwriters Policy. Federal courts sitting in diversity apply the choice-of-law rules of the forum state. *See Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014). Ohio courts have held that in the absence of a choice of law provision, contracts should be interpreted according to the laws of the state where the contract was made. *Nationwide Mut. Ins. Co. v. Ferrin*, 21 Ohio St. 3d 43, 44, 487 N.E.2d 568, 569 (1986); *Miller v. State Farm. Mut. Auto. Ins. Co.*, 87 F.3d 822, 825 (6th Cir. 1996) ("It is well-settled in Ohio that in cases involving a contract, the law of the state where the contract is made governs interpretation of the contract.").

Since the Underwriters Policy was issued to PHS in Mooresville, North Carolina, this Court applies North Carolina law. Under North Carolina law, insurance policies must be enforced according to their plain terms when the language is clear and unambiguous. *Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co.*, 524 S.E.2d 558, 563 (N.C. 2000) Courts may not "'rewrite the contract or impose liabilities on the parties not bargained for and found therein.'" *Id*. (quoting

*Woods v. Nationwide Mut. Ins. Co.,* 246 S.E.2d 773, 777 (1978)). Moreover, courts are to give effect to all policy provisions unless they are ambiguous; if ambiguity exists, it is construed in favor of the policyholder. *Id.*

Here, the Underwriters Policy includes an unambiguous SIR Endorsement stating that Underwriters are not obligated to pay any portion of the "Ultimate Net Loss," including defense costs, until PHS has paid the full $250,000 SIR. This obligation applies regardless of PHS's insolvency or bankruptcy. (ECF No. 30 ¶ 60; ECF No. 47 at 2, Exhibit E at 24). Based on this clear policy language, the Court concludes that Underwriters have sufficiently pleaded a meritorious claim for declaratory relief.

Accordingly, this factor weighs in favor of default judgment.

### 2. Prejudice to Plaintiff

When analyzing this factor, this Court must examine possible prejudice to the requesting party if default judgment is not granted. While Underwriters presented no argument to this point, this Court finds Underwriters would suffer prejudice if this Court were to deny Underwriters' motion now, effectively allowing Underlying Plaintiffs and PHS to bring up this conflict at a later time. Up to this point, Defendants have failed to respond to any filings in this case, thereby prolonging the litigation. Almost two years have passed since Underwriters have filed the initial complaint. In such circumstances, courts find the prejudice factor to be satisfied. *See*, *Toler v. Glob. Coll. of Nat. Med., Inc.*, 2016 WL 67529, at *7 (E.D. Mich. Jan. 6, 2016).

This factor also weights in favor of default judgment.

### 3. Amount of Money at Stake

In declaratory judgment actions, "'the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the

litigation.'" *Found. for Interior Design Educ. Rsch. v. Savannah Coll. of Art & Design*, 39 F. Supp. 2d 889, 895 (W.D. Mich. 1998), <u>aff'd,</u> 244 F.3d 521 (6th Cir. 2001) (quoting *Lodal, Inc. v. Home Ins. Co. of Ill.,* No. 95–2187, 1998 WL 393766, *1, 1998 U.S.App. LEXIS 12841 at *6 (6th Cir. June 12, 1998)).

The amount at stake in this action is not a direct monetary award but rather a declaratory judgment concerning the parties' rights and obligations under an insurance policy. Specifically, Underwriters seek a declaration that it owes no duty to defend or indemnify PHS in the underlying lawsuits until the $250,000 SIR has been satisfied. While the potential exposure under the policy includes up to $1 million per occurrence and $3 million in the aggregate, no monetary judgment is being requested against any Defendant at this time.

As such, the amount at stake is neutral.

### 4. Possible Disputed Material Facts

When a party fails to respond and the opposing party moves for default judgment, courts have found that "there is no indication of disputed material facts at this juncture." C.*A.T. Glob. Inc. v. OTT Trans. Services*, 737 F.Supp.3d 620, 629 (E.D.Mich. 2024); *see also Karnak Concrete LLC*, 2024 WL 3343070, at *4 ("Regarding the potential existence of contested material facts, Defendant has given nothing for this Court to evaluate since it has largely abstained from involvement in this proceeding.").

Here, Underlying Plaintiffs and PHS have not given this Court anything to evaluate regarding the possibility of disputed material facts, since it has not participated in this case.

This factor weighs in favor of default judgment.

### 5. Default Due to Excusable Neglect

For the same reason that this Court cannot evaluate the possibility of disputed material facts, it cannot conclude that Defendants' default was due to excusable neglect. Courts generally reject claims of excusable neglect where a defendant fails to engage with the proceedings in any way. *Indep. Ord. of Foresters v. Ellis-Batchelor*, No. 20-10619, 2021 WL 1588994, at *3 (E.D. Mich. Feb. 23, 2021) (citing 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2858 (3d ed. 2018)). Failure to respond when served with a complaint suggests a willful decision rather than excusable neglect. *See, e.g.*, *C.A.T. Glob. Inc.*, 737 F.Supp.3d at 629 ("The absence of Defendant's response and engagement suggests a willful decision to ignore the lawsuit."). "As careless or unintentional conduct does not give rise to excusable neglect, this defense is unavailable where Defendant has not offered any excuse for not timely responding to Plaintiffs' Motions." *Boards of Trustees of Ohio Laborers Benefits v. Karnak Concrete LLC*, 2024 WL 3343070, *4 (S.D. Ohio July 9, 2024).

After returning their Waivers of Service, Defendants have not answered to any of Underwriters' filings or participated in any other way. (ECF Nos. 8-22). Since the reason(s) for Defendants' silence are unknown, this Court treats this factor as neutral.

### 6. Preference for Decisions on the Merits

The final factor in this Court's analysis is inevitably in tension with default judgment, due to "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel c. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). At the same time, courts recognize that this preference must sometimes yield to the needs of the actual litigants. *See, e.g.*, *Toler v. Glob. Coll. of Nat. Med., Inc.*, 2016 WL 67529 at *9 ("[W]hile public policy favors resolution of cases on the merits, Defendants and their Counsel have consistently ignored opportunities for a

merits-based resolution by refusing to respond in this matter…'Effective judicial administration requires that at some point disputes be treated as finally and definitively resolved.'" (quoting 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2693 (3d ed.)). Given Defendants' lack of responsiveness since Underwriters' initial Complaint for Declaratory Judgment was filed almost two years ago, it appears unlikely that reaching a decision on the merits is realistic at this point. Therefore, this factor weighs in favor of default judgment.

Considered together, the factors heavily favor default judgment in this matter. Therefore, Plaintiff's Motion for Default Judgment (ECF No. 47) is **GRANTED**.

### III. CONCLUSION

For the foregoing reasons, the Motion for Default Judgment (ECF No. 47) is **GRANTED**. Accordingly, **DEFAULT JUDGMENT** is hereby entered in favor of Plaintiff, Certain Underwriters at Lloyd's, London subscribing to policy number Gll-10784-00 ("Underwriters").

It is hereby **DECLARED** that Underwriters have no duty to defend or indemnify Defendant Power Home Solar, LLC d/b/a Pink Energy, f/k/a Powerhome Solar & Roofing ("PHS"), under the Underwriters Policy in connection with the PHS Lawsuits, as defined in the Motion for Default Judgment.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 24, 2025**